Katharine Battaia Clark
Britton D. McClung
Laura M. Fontaine
HEDRICK KRING, PLLC
1700 Pacific Avenue, Suite 4650
Dallas, Texas 75201
Tel Phone: (214) 880-9600
Fax: (214) 481-1844
KClark@HedrickKring.com
Britt@HedrickKring.com
Laura@HedrickKring.com
**Attorneys for Triumphant Gold Limited**

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Rooftop Group International Pte. Ltd, | § | Case No. 19-31443-hdh11 |
| | § | |
| Debtor. | § | |

## MOTION FOR ORDER DECLARING AUTOMATIC STAY APPLIES TO DEBTOR PROPERTY UNDER AFFILIATE CONTROL

**NO HEARING WILL BE CONDUCTED HEREON, OR THE HEARING SET ON THIS APPLICATION WILL BE CANCELLED WITHOUT FURTHER NOTICE, UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE ST., RM. 1254, DALLAS, TX 75242-1496, BEFORE CLOSE OF BUSINESS ON AUGUST 3, 2019, WHICH IS AT LEAST 24 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

COMES NOW, Triumphant Gold Limited ("TGL"), and files this Motion for Order Declaring Automatic Stay Applies to Debtor Property Under Affiliate Control (the "Motion") to protect property of Rooftop Group International Pte Ltd. ("Rooftop" or "Debtor") in the asserted possession, custody, or control of non-debtor affiliates and respectfully would show the Court as follows:

## Summary

1. The Debtor has borrowed tens of millions of dollars from TGL to manufacture and purchase inventory in order to fulfill purchase orders ("POs") and generate accounts receivable, and has pledged its bank accounts, POs, and accounts receivable as security for the borrowed funds.  Based on the limited testimony of the Debtor's principal, Darren Matloff ("Matloff"), and available documentary evidence, the Debtor – which is ultimately owned and controlled by Gandiva Investments Limited ("Gandiva"), a BVI holding company believed to be controlled by Matloff – has impermissibly transferred certain encumbered assets out of the company to other Gandiva-controlled entities, Rooftop Group USA, Inc. ("Rooftop USA") and/or Rooftop Group Services (US), Inc. ("Rooftop Services"), seeking to shield those assets from the claims of TGL and other creditors until they can be dissipated.  Moreover, the Debtor operates its business under certain arrangements that, on information and belief, entitle the Debtor to an interest in certain property legally titled in the name of third parties.

2. Fifth Circuit precedent provides that the automatic stay can apply to property in the possession of a nondebtor that arguably belongs to the debtor's estate, pending a resolution of a non-frivolous dispute on that point.  Accordingly, TGL asks the Court to enter an order affirming the automatic stay applies to certain assets held on the Debtor's behalf by nondebtors Rooftop USA and/or Rooftop Services so that such assets can be preserved for the benefit of the estate.

**Procedural History**

3.      On April 30, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition for protection under chapter 11 of the United States Bankruptcy Code. In its petition, the Debtor states that it has between $1 million and $10 million in assets and $50 to $100 million in liabilities owed to less than 50 creditors. *See* Dkt. 1. The Debtor's recently filed schedules paint an even starker picture, with less than $10,000 in assets and more than $60,000,000 in liabilities. *See* Dkt. 21.

4.      Its schedules further reflect that all of the Debtor's major lenders and other creditors are foreign corporations. *See id.*[1] While the Debtor remains in possession of its estate, it has not filed any typical "first day" pleadings, except that it has requested to hire counsel (which apparently received the majority of the Debtor's liquid assets on the eve of Petition Date) [*see* Dkts. 20 & 22 (at Appendix 3)] and has now filed a sale motion as to certain intellectual property rights (though those rights are alleged to have been assigned at least in part to Amax Industrial Group China Co., Ltd. pursuant to unknown terms). *See* Dkt. 21 (Schedule G); Dkt. 44.

5.      TGL has moved to dismiss the bankruptcy, to lift the stay with respect to pending legal actions against the Debtor and its principal in Singapore, and alternatively to appoint a Chapter 11 trustee in the event that the motion to dismiss is denied. *See* Dkt. 27 ("Motion to Dismiss"). The arguments raised in the present Motion are made subject to and without waiving the Motion to Dismiss, in order that the assets of the estate may be preserved to the extent that the case remains in bankruptcy.

**Relevant Background**

6.      The Debtor is a Singapore company that has traditionally been in the business of the manufacture and sale of consumer "quadcopters," or drones. Darren Scott Matloff is the

---

[1] At the Debtor's 341 meeting, the Debtor's representative testified that many of the creditors listed that are not foreign entities are actually creditors of non-debtor entities.

**Motion for Order Declaring Automatic Stay Applies to Debtor Property Under Affiliate Control – Page 3**

founder, director and chief executive officer of the Debtor, and further controls and/or is the ultimate owner of an elaborate web of non-debtor affiliates. The Debtor's business operations are designed around an enterprise model that involves these non-debtor affiliates and/or agents for purposes ranging from alleged tax benefits to alleged low-cost customer service to alleged world-wide supply chain efficiencies. This arrangement creates beneficial ownership for the Debtor in property held by and/or entrusted to such non-debtor affiliates or agents.

7. On information and belief, Mr. Matloff has contributed little-to-no cash to the Debtor or the broader Rooftop enterprise, and instead the Debtor has borrowed roughly $85 million from lenders to keep the business afloat. Debtor's business is thereby wholly reliant on generation of new POs, for which it must then manufacture goods using borrowed funds, in order to generate accounts receivable. The Debtor has yet to account for the flow of this $85 million over time.

8. TGL[2] is an entity incorporated in the Cayman Islands and is in the business of providing mezzanine financing opportunities for various projects in Asia Pacific.

9. Prior to the Petition Date, in 2016, the Debtor and TGL entered into a series of agreements (as amended and restated from time to time, the "TGL Loan Agreement") pursuant to which TGL loaned money on a secured basis to the Debtor (the "TGL Facility") in order to, among other things, (a) provide working capital to the Debtor, and (b) finance the manufacture of recreational drones in China.

10. The Debtor's obligation to TGL was secured by, among other things, certain guarantees (including by Mr. Matloff personally and by certain affiliates), a pledge of stock in Rooftop to TGL by affiliate and majority shareholder Gandiva Investments Limited (a BVI

---

[2] TGL is a special purpose vehicle of Aktis Capital Master Fund Limited, which engages in direct/structured investment activities in developing and emerging economies in Asia. Aktis Capital has not loaned money directly to Rooftop.

**Motion for Order Declaring Automatic Stay Applies to Debtor Property Under Affiliate Control – Page 4**

company),[3] an assignment to TGL of POs and accounts receivable (trade assets) into which the POs converted once goods were delivered, and a charge over certain bank accounts in Hong Kong. The agreement provided for maintenance of a specified loan-to-value ratio base of this type of trade asset.

11. Even as Rooftop began experiencing cash flow constraints, Rooftop negotiated with TGL for certain extensions and forbearances of rights and remedies, with TGL ultimately agreeing to five rounds of such extensions and forbearances. These negotiations included TGL extending millions of dollars in additional secured financing similar to the initial facility but with conditonal use of cash. In essence the additional facility was "rescue funding" to reignite Rooftop's business engine in 2017.

12. In 2018, Rooftop sought yet another round of concessions from TGL, but without offering any meaningful support that Rooftop would fulfill any extended terms, let alone any outstanding facility infractions. In fact, Rooftop and Mr. Matloff were already in breach of not only payment obligations but certain other material obligations under the TGL Loan Agreement and related security documents, including with respect to the security Rooftop had pledged to TGL.[4] On or about February 2018, Rooftop willfully breached TGL's security pool (use of cash from pledged bank account) and ceased adherence to certain operational, procedural, and informational responsibilities required under the TGL agreement. Indeed, the TGL Loan Agreement requires TGL's consent, which has not been obtained, to the very filing of this Chapter 11 case.

---

[3] On information and belief, Gandiva is a BVI holding company through which a Matloff family trust ("Matloff Trust"), managed by Mr. Matloff, owns Rooftop.
[4] For example, TGL has learned that Rooftop has purported to pledge assets, already subject to TGL's affirmative or negative pledge, to other lenders and that Rooftop transferred funds out of accounts on which TGL had liens, all in violation of covenants in the TGL Loan Agreement.

13. In essence, TGL and the Debtor's bargain was that POs, and the accounts receivable into which they convert on delivery of the underlying drones, were pledged to TGL in a coverage of up to almost twice the outstanding principal. Once TGL funded the loans to the Debtor, new POs (on top of pre-existing POs and accounts receivable) would be generated, which in turn would generate more inventory, more accounts receivable, more cash, and so on over each sales cycle. Accordingly, even after accounting for trade payments, normal overhead, agent payments, and debt service, there should be tens of millions of dollars – not $7,000 – remaining for the Debtor's creditors. Indeed, a summary of the POs and A/R held by the Debtor as of January 11, 2018, shows a total value of nearly $15 million – enough to cover the debt amount then owed to TGL. *See* Ex. A at 11.

14. Therefore, TGL took legal action in Singapore against Rooftop, Mr. Matloff, and certain Rooftop affiliates to (a) enforce TGL's rights, including with respect to Rooftop affiliate Gandiva's pledge of Rooftop shares and with respect to Mr. Matloff's personal guarantee, (b) address TGL's growing concern for Rooftop's on-going viability under Mr. Matloff's management, and (c) preserve Rooftop's assets.[5] Those lawsuits are more fully described in TGL's pending Motion to Dismiss Bankruptcy Filing or, alternately, to Lift the Automatic Stay (Dkt. 27).[6]

15. The Debtor has not provided transparency into the lower-tier non-debtor entities through which the Debtor operates. However, it has admitted that (i) POs, A/R, and inventory are held by non-debtor entities Asian Express Holdings Limited ("Asian Express") and Rooftop USA

---

[5] Notably, Rooftop's pleadings in the Singapore arbitration as to its financial health in the first quarter of this year are in stark contrast to its current Chapter 11 filings.

[6] Interestingly, while the Debtor's usual conduct in these suits involved evading and ignoring summonses, process service, and deadlines, the Debtor itself sought legal recourse on each of the two occasions (the Singapore arbitration action, in which it was roundly defeated, and this Chapter 11 filing) when it found itself on the verge of a judgment in Singapore courts in TGL's favor.

(and potentially the Debtor's European affiliates), and (ii) it has certain express or implied relationships with these entities.

16. Specifically, marketing information distributed by the Debtor in January 2018 showed that the Debtor's Propel-branded drones alone enjoyed sales of nearly $80 million in 2017. *See* Ex. B at 5-7. Adding in Disney sales accounting for roughly another $70 million, an additional $60 million of inventory on hand, and a combined $37 million in "Star receivables" and "non-Star receivables," the Rooftop business was a quarter-billion dollar enterprise at the end of 2017. *See id.* Likewise, in a similar presentation dated Spring 2018, the Debtor claimed over $23 million in operating capital on hand and projected robust revenue and earnings growth to achieve $170 million in revenue and $35 million in earnings by fiscal year 2020. *See* Ex. C at 5-7.

17. Meanwhile, on March 1, 2018 – just a few weeks after the Debtor's January 2018 presentation asserting its financial strength – approximately $620,000 was transferred from an Asian Express account at HSBC Bank in Hong Kong subject to TGL's security interests to a Rooftop USA account in New York that is not subject to any TGL security interest. *See* Ex. D at 2 [Chase statement showing transfers of $489,975, $76,368, and $54,475]. This fraudulent transfer was in direct violation of the Debtor's covenants to maintain charged accounts as security for TGL's investment. *See* Ex. A at § 7A [Side Letter Agreement 1-16-18].

18. As another red flag, the Debtor's balance sheet as of December 31, 2017, shows over $32 million in accounts receivable, most of which is held by related parties. *See* Ex. E. However, none of this was disclosed in the Debtor's bankruptcy schedules, meaning that either assets currently held by the Debtor are being concealed from the Court or such assets were transferred elsewhere without notice to Debtor's creditors in violation of contractual agreements and covenants.

19. TGL anticipates that many more such fraudulent transfers will be uncovered in discovery to explain how the Debtor suddenly went from a $250 million business to a $7,000 business in just over one year. It is simply not credible that a burgeoning $250 million business at the end of 2017, which had the prospect of a further full year of funding through the end of 2018 from its US-based lender Star Funding, Inc. (whose facility, which revolved around a maximum outstanding at any time of at least $50 million, was commenced near the end of 2017), has become penniless. And, not coincidentally, an incredibly similar business involving drones bearing the same makes and marks as those previously sold by Debtor is now being operated by Debtor's affiliate Amax Industrial Group China Co., Ltd., strongly suggesting that Debtor's founder intends to carry on the Debtor's business operations while escaping his interest and principal obligations to lenders and fee obligations to parties such as Disney.

### Arguments and Authorities

20. Section 362(a)(3) of title 11 provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

21. The Fifth Circuit has distilled three principles establishing when the automatic stay created by 11 U.S.C. § 362(a)(3) applies to non-debtors on account of a debtor's property interest against that non-debtor:

- a section 362(a)(3) stay applies to a cause of action that under state (or federal) law belongs to the debtor;

- a section 362(a)(3) stay applies to a cause of action that seeks to recover property of the estate where the property is held or controlled by a person or entity other than the debtor; and

- in applying the above rules we do so by keeping in mind the Bankruptcy Code's general policies of securing and preserving the debtor's property and

of ensuring equal distribution of the debtor's assets to similarly-situated creditors.

*Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1150 (5th Cir. 1987); *see also In re Chesnut*, 422 F.3d 298, 301 (5th Cir. 2005) ("The automatic stay is designed to protect creditors as well as debtors. Without the stay, creditors might scramble to obtain as much property of the debtor's limited estate as possible. The automatic stay prevents such a scramble by providing 'breathing room' for a debtor and the bankruptcy court to institute an organized repayment plan.").

22. Accordingly, the Court should find that the stay extends to property in the possession of a non-debtor if it impacts the equitable sharing among creditors promoted by the bankruptcy laws. As the Fifth Circuit noted in *Chesnut*, the automatic stay applies to "arguable" property of the bankruptcy estate, which it defined as property "subject to a non-frivolous dispute" as to whether it was property of the estate. *Id.* at 302-303.

23. Here, there is significant evidence that property in the asserted possession of non-debtors is, in fact, property of the estate. In connection with its loan agreement with TGL, the Debtor executed a side letter agreement with TGL providing TGL a security interest in the Debtor's accounts receivable and its bank account. These receivables were pledged to TGL such that the receivables would total at least 55% of the outstanding loan balance. Ex. A at ¶ 6.

24. Moreover, as recently as the spring of 2018, Matloff was representing to investors that the Debtor had $36 million in inventory and remained a going concern. Ex. C at 7. However, per its bankruptcy schedules filed on May 30, 2019, the Debtor's only assets aside from intellectual property are (a) $7,065.71 in cash, and (b) its alleged 100% ownership interests in several entities, including Rooftop Services. Dkt. No. 21 at 4. In light of the Debtor's current stated assets, substantial assets have been transferred to affiliates to hold on behalf of the Debtor pursuant to

express or implied beneficial interests. Either those rights remain or have been fraudulently transferred away.

25. The Debtor specifically claims that it has no accounts receivable or purchase orders. *Id.* at 3. This claim either ignores the Debtor's beneficial ownership or demonstrates the Debtor transferred the Debtor's property, which was subject to TGL's security interests, to accounts of others such as Rooftop USA and/or Rooftop Services. In sum, the Debtor now alleges very few assets in its possession, while admitting other Rooftop entities or affiliates have substantial assets. On information and belief, those assets rightfully belong to the Debtor.

26. As arguable property of the estate, *see Chestnut*, 422 F.3d at 302, these assets are therefore subject to the automatic stay and should remain in place to preserve the status quo for the benefit of all creditors until their inclusion in the estate can be confirmed. "[O]ne of the purposes of the stay is to preserve the status quo so that the bankruptcy court can ensure that all creditors of the bankruptcy estate are treated equitably and fairly. By allowing [creditor] to continue with its cause of action against the remaining nonbankrupt corporate defendants, which it alleges are part of a single enterprise with the bankrupt corporate defendant, 'would undercut the general bankruptcy policy of ensuring that all similarly-situated creditors are treated fairly.'" *Rehab Choice Inc. v. CLC Healthcare, Inc.*, CIV.A. 4:07-CV-314-Y, 2007 WL 1944344, at *6 (N.D. Tex. July 2, 2007).

## Request for Relief

Triumphant Gold respectfully requests that the Court grant this Motion and enter an order (a) declaring that the automatic stay applies to all property in which the Debtor arguably holds an interest; (b) directing that (1) the status quo is maintained as to all money, POs, A/R, and inventory held by affiliated or related non-debtor entities, including but not limited to Rooftop USA, Rooftop

Services, Asian Express, Gandiva, the Matloff Trust, and any European affiliates of the Debtor, (2) the Debtor is required to account to the Court for all such property, and (3) any party wishing to take any action with respect to the property first seek relief from the Court; and (c) granting such other and further relief as the Court deems just and proper.

DATED this 10th day of July, 2019

>Respectfully submitted,
>
>/s/ *Katharine Battaia Clark*
>**Katharine Battaia Clark**
>Texas State Bar No. 24046712
>**Britton D. McClung**
>Texas State Bar No. 24060248
>**Laura M. Fontaine**
>Texas State Bar No. 24065239
>
>**HEDRICK KRING, PLLC**
>1700 Pacific Avenue, Suite 4650
>Dallas, Texas 75201
>Tel Phone: (214) 880-9600
>Fax: (214) 481-1844
>KClark@HedrickKring.com
>Britt@HedrickKring.com
>Laura@HedrickKring.com

## CERTIFICATE OF CONFERENCE

I hereby certify that on July 10, 2019, the undersigned counsel circulated a copy of the Motion for purposes of conference to counsel for the Debtor. At the time of the filing of the Motion, counsel for the Debtor, responded as opposed. Undersigned counsel for the movant is not currently aware of counsel representing the Creditors' Committee and is thus unable to confer with the Creditor's Committee at this time.

>*/s/ Katharine Battaia Clark*
>Katharine Battaia Clark

# CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the above and foregoing instrument has been served electronically via the Court's ECF noticing system on those parties who receive notice from that system on the 10th day of July, 2019 and on the following parties pursuant to Local Rule 4001-1(a) on 11th day of July, 2019, by regular United States mail, *with courtesy copy by email:

| | |
|---|---|
| **The Debtor**<br>Rooftop Group International Pte. Ltd.<br>5218 Spruce Street<br>Bellaire, TX 77401 | **Proposed Counsel to the Debtor**:<br>Michael P. Cooley<br>Lindsey L. Robin<br>REED SMITH LLP<br>2501 N. Harwood, Suite 1700<br>Dallas, Texas 75201 |
| **Committee Members:**<br>Brian Dlugash<br>4A, 12 Shipyard Lane<br>Quarry Lane, Hong Kong<br>Hong Kong<br>+852 27112474 ext. 769<br>+852 28563488 (fax)<br>bdd@wpl.com.hk | **Counsel to Disney Consumer Products**<br>Thomas A. Connop<br>Matthew H. Davis<br>LOCKE LORD LLP<br>2200 Ross Avenue, Suite 2800<br>Dallas, Texas 75201 |
| *PICA Australia Pty., Ltd.<br>c/o Sian Mimmo, Managing Director<br>11/37 Kellor Park Drive<br>Kellor Park 3042<br>Australia<br>sian@pica.com.au | |
| *Begaline Limited<br>c/o Tan Aik Keong, Director<br>Mailing Address:<br>57B Devonshire Road #15-06<br>Singapore 239899<br>aikkeong@gmail.com | |
| **US Trustee**<br>Office of the United States Trustee<br>c/o Nancy Resnick, trial attorney<br>Earle Cabell Federal Building<br>1100 Commerce Street, Room 976<br>Dallas, TX 75242 | |
| **Darren Scott Matloff, individually**<br>Mr. Darren Matloff<br>c/o Law Office of Sarah M. Cox<br>12770 Coit Road, Suite 1100<br>Dallas, TX 75251 | |

                                                                         */s/ Katharine Battaia Clark*
                                                                            Katharine Battaia Clark