Michael P. Cooley (SBN 24034388)
Keith M. Aurzada (SBN 24009880)
Lindsey L. Robin (SBN 24091422)
**REED SMITH LLP**
2501 N. Hardwood Street, Suite 1700
Dallas, Texas 75201
T:  469.680.4200
F:  469.680.4299
mpcooley@reedsmith.com
kaurzada@reedsmith.com
lrobin@reedsmith.com

*Attorneys for the Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Rooftop Group International Pte. Ltd. | § | Case No. 19-31443 |
| | § | |
| Debtor. | § | |

### RESPONSE TO MOTION FOR ORDER DECLARING AUTOMATIC STAY APPLIES TO DEBTOR PROPERTY UNDER AFFILIATE CONTROL

Rooftop Group International Pte. Ltd., as debtor and debtor in possession (the "***Debtor***") hereby files this response in opposition to the *Motion for Order Declaring Automatic Stay Applies to Debtor Property Under Affiliate Control* [Docket No. 47] (the "***Stay Motion***") filed July 10, 2019, by Triumphant Gold Limited ("***TGL***") and respectfully states as follows:

### I.
### BACKGROUND

1.     The Debtor is a private limited company organized under the laws of Singapore. At present, the Debtor has no operations and has no employees, and its remaining assets are composed almost entirely of certain patents, trademarks, and other intellectual property. In addition, the Debtor licenses its Propel brand to Amax Industrial Group China Co, Ltd. ("***Amax***") under a nonexclusive license agreement (the "***Amax License***").

2. To preserve the value of its intellectual property assets for the benefit of all its unsecured creditors, on April 30, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11. The Debtor has proposed selling its interest in certain intellectual property and the Amax License through a sale to be conducted under § 363. *See* Docket Nos. 40 and 42.

3. On June 14, 2019, creditor Triumphant Gold Limited ("**TGL**") filed its *Motion to Dismiss Bankruptcy Filing or, Alternately, to Lift the Automatic Stay* [Docket Nos. 26, 27] (the "**Dismissal Motion**"). After a preliminary hearing on July 3, 2019, TGL and the Debtor conducted discovery, including depositions, regarding the Dismissal Motion.

4. The Court held an evidentiary hearing on August 1, 2019 regarding TGL's Dismissal Motion and, on August 6, 2019, issued an oral ruling providing detailed findings of fact and conclusions of law and denying all relief requested in that motion.

## II.
## RESPONSE

**A.    The Stay Motion was not served on affected parties.**

5. As a threshold matter, the Stay Motion suffers a fatal procedural defect—the Stay Motion was not served on any of the parties over whose businesses TGL asks this Court to extend the automatic stay. In the Stay Motion, TGL asks this Court to "extend" the protections of the automatic stay to protect assets in the hands of nondebtors in the belief that those assets are actually property of the Debtor's bankruptcy estate and therefore subject to the same protections of § 362(a) that protect the Debtor and all its assets. In this way, the Stay Motion is a request to exercise its *in rem* jurisdiction over assets that TGL contends are property of the estate.

6. The Debtor has already introduced substantial evidence that the assets that TGL alleges may "arguably" be property of the estate are in fact the lawful property of those other nondebtor entities. At the hearing on this Motion, the Debtor will offer that same evidentiary record in opposition to the relief TGL seeks. However, the various nondebtor entities over whom TGL would have this Court exercise its jurisdiction are also entitled to notice

Page 2

of the Stay Motion and an opportunity to present supporting evidence. TGL's apparent failure to provide notice to any of those nondebtor entities is itself grounds for denial of the Stay Motion. For this reason alone, the Stay Motion should be denied.

**B.     TGL's allegations have already been refuted.**

7.     Turning to more substantive grounds, TGL must concede that the allegations underpinning the requested relief overlap substantially—if not entirely—with the allegations TGL made in connection with its recently denied Dismissal Motion. Indeed, many of the factual allegations made in the background section of the Stay Motion (including entire paragraphs) were lifted nearly verbatim from the Dismissal Motion.

8.     On August 1, 2019, the Court conducted a 6-hour evidentiary hearing, in the course of which the Court heard several hours of sworn testimony of two witnesses and received numerous documents into evidence. Based on that evidence, the Court denied the Dismissal Motion, making several findings that TGL's allegations of bad faith, fraudulent transfers, and corporate mismanagement were simply not supported by the evidence or else were directly controverted by the evidence admitted at trial.

9.     In support of its opposition to the Stay Motion, therefore, the Debtor asks this Court to take judicial notice of the documents admitted and sworn testimony received by the Court at the August 1, 2019, hearing on TGL's two earlier motions. The Debtor asks further that the Court admit such evidence in connection with the Court's adjudication of this Motion.

10.     Based upon the evidentiary record already adduced in this case, there is no evidence to support—and much evidence to contradict—TGL's claims that there is property of this Debtor's estate currently in the possession, custody, or control of other entities.

**C.     The relief TGL seeks is unprecedented and unwarranted.**

11.     Turning to the legal basis of the Stay Motion, TGL advances two arguments: first, that the automatic stay may be extended to causes of action that seek to recover property of the estate from a nondebtor and,

second, that the automatic stay may be extended to protect property that is "arguably" property of the estate. Both arguments miss the mark.

12. Starting with the *S.I. Acquisition* decision, the Fifth Circuit was concerned not with the extension of the automatic stay to enjoin the use of property held in the hands of nondebtor entities, but the circumstances in which the continuation of a creditor's pending lawsuit against a nondebtor might be barred by the automatic stay. *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1150 (5th Cir. 1987). Concluding that the plaintiff's cause of action against the debtor's controlling person was based on a claim that belonged to the debtor, the Fifth Circuit concluded that the lawsuit in question was one that could be asserted by the debtor itself. *Id.* at 1152 ("Since the corporation has an independent existence at law, we do not believe it is inconsistent in light of the above policy to say that a corporation may pierce its own corporate veil…"). Thus, the Fifth Circuit held, the claims asserted in the pending lawsuit were property of the estate such that § 362(a)(3) stayed their continued prosecution as an act to obtain possession of or exercise control over property of the estate. *Id.* at 1154.

13. The present case does not involve the situation addressed by the Fifth Circuit in *S.I. Acquisition*. Rather than seeking a determination whether the automatic stay bars continuation of a pending lawsuit in which the Debtor's estate itself holds a property interest, TGL seeks to *extend* the automatic stay to enjoin nondebtors from using assets on the theory that those assets *might* belong to the Debtor. TGL thus turns its attention to *In re Chesnut* in an attempt to mingle the two cases into a single legal theory to support its extraordinary request for relief.

14. In *Chesnut*, the Fifth Circuit grappled with a different problem: whether a creditor violates the stay if, without first seeking stay relief, the creditor forecloses on an asset in which the debtor has an "arguable claim of right." *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 300 (5th Cir. 2005) (characterizing such property as "arguable property"). Explaining that "[n]ot ever bankruptcy petition…will transfer what is obviously not property of the estate into arguable property of the estate that is subject to process requirements," the Fifth Circuit explained that the relevant inquiry is whether

ownership of the property "was subject to a non-frivolous suit." *Id.* at 302, 306. In *Chesnut*, the property in question was a parcel of land, and the non-frivolous dispute centered on whether it was the separate property of the debtor's spouse or the community property of both the debtor and his spouse.

15. In the instant case, and in light of the Court's recent ruling on the Dismissal Motion, TGL can point to no such "non-frivolous dispute." To the contrary, each and every one of its contentions has been answered with documentary evidence and sworn testimony, and this Court has rejected those contentions on the basis of that evidence. Absent more, TGL's mere *belief* or *suspicion* of a lingering property interest of the Debtor is insufficient to trigger the automatic stay under the *Chesnut* analysis.

16. It further bears note that in *Chesnut*, as in *S.I. Acquisition*, the automatic stay was invoked *by the debtor* to prevent a creditor from obtaining possession or control over property in which the debtor claimed an ownership interest. In both cases, the invocation of the automatic stay served to preserve the status quo by enjoining a foreclosing creditor from seeking to exercise control over property in which the debtor affirmatively expressed an interest. Here, the debtor has claimed no such interest in the property of the various nondebtors whom TGL seeks to enjoin. Instead, here the automatic stay is invoked *by the creditor* to enjoin nondebtors from using property in their current possession and control. Neither *S.I. Acquisition* nor *Chesnut* stands for the proposition that the injunctive reach of § 362(a) extends so far as that.

17. Further, the cases cited by TGL sought to extend the automatic stay to alleged property of the estate in the possession of a specific entity. Here, TGL seeks relief to be granted against any "affiliated or related non-debtor entities," including certain enumerated entities and "any European affiliates of the Debtor." As for those entities specifically named by TGL in its motion as the targets of its requested relief—

(a) <u>Rooftop USA</u>. The Court has already heard the credible testimony of Darren Matloff regarding the ownership by Rooftop USA of inventory and other assets in its possession. This evidence was further corroborated by the Star Funding intercreditor agreement, in which TGL acknowledged both the ownership by Rooftop USA of such assets and the inferiority to Star Funding of TGL's own security interest in such assets.

(b) <u>Rooftop Services</u>. The Court has already heard the credible testimony of Darren Matloff regarding the current lack of any business activity or assets at Rooftop Services.

(c) <u>Asian Express</u>. TGL has made no specific allegation of any property of the estate that it contends is presently in the possession or control of Asian Express. The Debtor submits there is none.

(d) <u>Gandiva</u>. TGL has made no specific allegation of any property of the estate that it contends is presently in the possession or control of Gandiva. The Debtor submits there is none.

(e) <u>Matloff Trust</u>. TGL has made no specific allegation of any property of the estate that it contends is presently in the possession or control of the Matloff Trust. The Debtor submits there is none.

18. Finally, although TGL does not specifically name Amax among the entities targeted in its prayer for relief, the Stay Motion nevertheless recycles TGL's belief that the Debtor's business has been somehow transferred from the Debtor to Amax, "strongly suggesting that Debtor's founder intends to carry on the Debtor's business operations while escaping his interest and principal obligations to lenders and fee obligations to parties such as Disney." Motion ¶ 19. Again, however, the evidence in this case speaks squarely to the contrary.

19. The Debtor granted Amax a nonexclusive license for the Propel brand in a last-ditch effort to preserve the company's business from oblivion following the severe underperformance of the Star Wars product line and the devastating effect of TGL's onerous loan terms and repayment

cycle. On August 1, the Court heard the credible testimony of Darren Matloff on the reasons for his decision to grant the Amax license and, based on that evidence, concluded that the decision to grant the Amax license was a reasonable act of preservation that did not appropriate any business opportunity that would otherwise have remained available to the Debtor.

20.     Were the Court to grant the relief TGL requests, it would be devastating to Amax's business activity. An injunction "directing that the status quo is maintained" as to all purchase orders, receivables, and inventory currently in Amax's hands would immediately grind its business to a halt and almost certainly put Amax out of business completely. More importantly to the interests of this Debtor's estate, however, the inability of Amax to fulfill purchase orders would cut off any potential royalty revenue that would otherwise flow from Amax to the Debtor under that license agreement. The relief TGL seeks would therefore deprive this estate of *actual* value—not merely the "arguable" value of which TGL speaks—and send an immediate message to any other potential licensees that a Propel license is a worthless investment. TGL must not be permitted to continue its devastating attacks on the Debtor and other companies in its orbit. The Stay Motion should be denied.

WHEREFORE, the Debtor respectfully requests that the Court deny the relief requested in the Stay Motion.

Dated: August 8, 2019
Dallas, Texas

By: */s/ Michael P. Cooley*
Michael P. Cooley (SBN 24034388)
Keith M. Aurzada (SBN 24009880)
Lindsey L. Robin (SBN 24091422)
**REED SMITH LLP**
2501 N. Harwood St., Ste. 1700
Dallas, Texas 75201
T: 469.680.4200
F: 469.680.4299
mpcooley@reedsmith.com
kaurzada@reedsmith.com
lrobin@reedsmith.com

*Attorneys for the Debtor*

## CERTIFICATE OF SERVICE

The undersigned certifies that, on August 8, 2019, a true and correct copy of the foregoing document was served via email or via the Court's Electronic Case Filing (ECF) System upon TGL, the members of the official unsecured creditors' committee, and all parties registered to receive electronic notices in this case. .

*/s/ Michael P. Cooley*
Michael P. Cooley